IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

HAROLD FITZGERALD, JR.,               :
                                      :
          Movant/Defendant,           :
                                      :
          v.                          :        Civ. Act. No. 13-1560-LPS
                                      :        Cr. Act. No. 08-147-LPS
UNITED STATES OF AMERICA,             :
                                      :
          Respondent/Plaintiff.       :

---

Peter J. Scuderi, Esquire.
      Attorney for Movant.


Shawn Weede, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware.
      Attorney for Respondent.




**<u>MEMORANDUM OPINION</u>**




September 26, 2016
Wilmington, Delaware

STARK, U.S. District Judge:

## I.      INTRODUCTION

Harold Fitzgerald, Jr. ("Movant") filed a timely *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (D.I. 112) The United States ("Government") filed an Answer in Opposition. (D.I. 122) After retaining counsel, Movant filed a Motion for Leave to File an Amended § 2255 Motion with the Amended Motion attached thereto. (D.I. 137) The Government filed a Response to the Motion for Leave to Amend (D.I. 139), and a Supplemental Response to the Amended Motion (D.I. 142).

For the reasons discussed, the Court will grant in part the Motion for Leave to Amend and deny Movant's Amended § 2255 Motion without holding an evidentiary hearing.

## II.     PROCEDURAL AND FACTUAL BACKGROUND[1]

On September 19, 2008, the federal grand jury for the District of Delaware issued a four-count Indictment against Movant. (D.I. 2) The first three counts charged conspiracy to distribute and knowing possession of cocaine. *Id.* Count IV charged Movant with conspiracy to commit money laundering under 18 U.S.C. § 1956. *Id.* At trial, the Government presented evidence and testimony showing that Movant was a part of an ongoing cocaine distribution ring in which he received shipments of cocaine sent from Texas to apartment complexes in the greater Philadelphia area and sent cash acquired through the sale of the cocaine back to Texas through Federal Express. (D.I. 88 at 2-166; D.I. 89 at 75-199)

Four cooperating defendants testified about the operation of the cocaine and money laundering conspiracies and Movant's role therein: Robert Shepherd, Vanivan Fuller, Bradley Torrence, and Rasheem Dollard. The testimony can be divided into three categories: (1) testimony

---

[1]This case was originally assigned to the Honorable Joseph J. Farnan, Jr., who presided over Movant's jury trial. The case was reassigned to the undersigned's docket on August 17, 2010, and this Court presided over Movant's sentencing.

from Shepherd, Fuller, Torrence, and Dollard describing the beginning stages of the conspiracy from 2004 through March 2006, which involved uncharged conduct (D.I. 142 at 3-5; D.I. 89 at 9-24, 44-71); (2) testimony from Shepherd and Fuller describing the conduct underlying the charged conspiracy from March through October 2006 (D.I. 87 at 94-96, 147; D.I. 88 at 15-16, 21-25, 27, 30-33, 35-39; D.I. 89 at 83, 101-106, 108-115); and (3) testimony from Fuller describing how Movant and Fuller continued the conspiracy after Shepherd was arrested, from October 2006 through January 2007 (D.I. 89 at 116-118, 120, 131, 136-58)

More specifically, as summarized by the Third Circuit in Movant's direct appeal:

> [Movant's] involvement with his co-conspirators pre-dated the charged conspiracy. Robert Shepherd testified to [Movant's] close relationship with and performance of tasks for Andele Johnson, who purchased drugs from Vanivan Fuller, a dealer in Texas, and directed their sale in Philadelphia and the surrounding area. Fuller testified that he spoke frequently with [Movant] to coordinate shipments of drugs and money. After Johnson's arrest, his childhood friend Shepherd took over the operation. Shepherd testified that he often fronted cocaine to [Movant] because he repaid his debts. Bradley Torrence, who assisted Shepherd in the operation, testified that he sold [Movant] cocaine while Shepherd was out of town and that he did not require full payment because of [Movant's] close relationship with Shepherd.
>
> This pre-conspiracy evidence demonstrates [Movant's] intent during his involvement in the charged conspiracy, which began in March 2006, following Torrence's arrest. During the charged conspiracy, Shepherd and [Movant] received shipments of cocaine from Fuller. Some of the cocaine belonged to Fuller. Shepherd and [Movant] were expected to sell it and ship the profits back to him. The remainder was paid for in advance by Shepherd and [Movant] and belonged to them. Fuller testified that [Movant] informed him on multiple occasions that some of the cocaine belonged specifically to [Movant], as [Movant] had used his own money to purchase it. Shepherd testified that he and [Movant] jointly scouted vacant apartments to which the packages of cocaine could be safely shipped and that [Movant] would generally retrieve the packages. Shepherd further testified that [Movant] would sometimes sell the packages directly, while on other occasions they would meet and divide the contents. Cash would then be sent back to Fuller. Shepherd and [Movant] would tell Fuller how much cash to expect. The payment

2

would include Fuller's profits for his cocaine, as well as Shepherd's and [Movant's] payment for the next shipment.

Following Shepherd's arrest, [Movant] engaged in at least one more transaction with Fuller. Fuller testified that [Movant] met him in Tennessee and accepted two kilograms of cocaine in return for money Shepherd had paid Fuller just prior to Shepherd's arrest. [Movant's] travel to Tennessee is confirmed by phone records. The nature of the transaction is corroborated by a contemporaneous conversation Fuller had with Shepherd, which was recorded and played for the jury at trial.

Eventually, the conspiracy drew the attention of law enforcement. At trial, Special Agent Scott Duffy testified that the FBI took note of a pattern of packages with similar features, namely the use of stolen corporate account numbers to pay for the shipment, similar origin and destination addresses, and similar delivery instructions. In August 2006, the FBI discovered that two packages fitting the observed pattern were in transit to locations in Delaware. Testimony by Fuller confirmed that he personally shipped those packages and that two or three kilograms of cocaine were contained in each package. DEA Task Force Officer Lawrence Collins testified that on August 24, 2006, he surveilled the first Delaware location, observed the delivery of a FedEx package, and then observed [Movant] enter the building and exit with a FedEx package. Robert Shepherd was present in his own vehicle, and the officer observed a brief meeting between the two. A similar delivery occurred two days later. Officer Collins and FBI Special Agent Michelle Taylor testified as to [Movant's] arrival at the package's destination and his eventual departure with the package. A note addressed to the FedEx driver and the FedEx door tag were retrieved from that location. Both bore [Movant's] fingerprints.

*United States v. Fitzgerald*, 496 F. App'x 175, 176-77 (3d Cir. 2012).

The jury convicted Movant on all four counts of the Indictment, and the Court sentenced him to 240 months of imprisonment on each count, to run concurrently, followed by twenty years of supervised release. (D.I. 103) Movant appealed, and the Court of Appeals for the Third Circuit affirmed Movant's conviction. *See Fitzgerald*, 496 F. App'x at 180.

3

Movant filed a § 2255 Motion in September 2013.  The Motion contains thirteen claims[2] asserting that defense counsel provided ineffective assistance by: (1) failing to investigate the admission policies of the apartment complexes; (2) failing to secure independent expert fingerprint testimony; (3) failing to secure independent expert drug testimony; (4) failing to secure independent expert handwriting testimony; (5) failing to call character witnesses Darin Govens and Tausheed Carr; (6) failing to inform him of the Government's offer to enter an "open plea;" (7) failing to call "John Hartnett" as a trial witness; (8) failing to call Tiffany Beulah as a witness because counsel was romantically interested in Ms. Beulah; (9) failing to call Lisa Fitzgerald as a witness; (10) failing to call Leslie Fitzgerald as a witness; (11) failing to disclose his conflict of interest with respect to Leslie Fitzgerald; (12) failing to disclose his conflict of interest with respect to Tiffany Beulah; and (13) failing to investigate and resolve criminal charges pending against Movant in Delaware County, Pennsylvania.

The Government filed an Answer in Opposition to Movant's § 2255 Motion.  (D.I. 122) After retaining counsel, Movant filed a Motion for Leave to Amend his original § 2255 Motion (D.I. 137) and a Praecipe for Determination[3] (D.I. 140), to which the Government responded (D.I. 139; D.I. 141; D.I. 142).

## III.    MOTION TO AMEND

In the Amended § 2255 Motion attached to his Motion for Leave to Amend, Movant states that he wishes to incorporate seven of the ineffective assistance of counsel claims asserted in his

---

[2]The Motion refers to the thirteen claims as 6(A), 6(B), 6(C), 6(D), 6(E), 6(F), 6(G), 6(H), 6(I), 6(J), 6(K), 6(L), and 6(M).  For ease of analysis, the Court has identified the claims numerically (Claim One, Claim Two, etc).

[3]Although docketed as a Motion for Leave to Amend, the document is titled Praecipe for Determination, and asks for a determination of the earlier filed Motion for Leave to Amend.

original Motion (the aforementioned Claims Two (6(B)), Five (6(E)), Eight (6(H)), Nine (6(I), Ten (6(J), Eleven (6(K)), Twelve (6(L)), and he asks to add the following three new arguments: (1) defense counsel was ineffective for failing to investigate and utilize an alibi defense; (2) defense counsel was ineffective for failing to utilize a private investigator to interview witnesses; and (3) his sentence should be vacated pursuant to the Supreme Court's decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013), to the extent that there were "sentencing enhancements which increased Movant's sentence, but were not submitted to the jury." (D.I. 137 at 7-8)  The Government filed a Response, stating that it does not object to the inclusion of Movant's two new ineffective assistance of counsel claims, but argues that Movant's request to include his new *Alleyne* argument should be denied as untimely. (D.I. 139 at 3-4)  The Government's Response does not address Movant's implicit request to delete[4] six of the original thirteen ineffective assistance of counsel claims (Claims One (6(A)), Three (6(C)), Four (6(D)), Six (6(F)), Seven (6(G)), and Thirteen (6(M)).  The Government also filed a Supplemental Response to Movant's Motion for Leave to Amend, which addresses the substantive arguments in the Motion to Amend and the Amended Motion attached thereto.  (D.I. 142)

After reviewing the record, the Court makes the following determinations with respect to Movant's Motion to Amend.  First, the Court will grant Movant's implicit request to delete six of his original claims.  Since Movant's newly-retained counsel asserted the deletion request after the Government filed its Reply, the Court views the request as an attempt to streamline and present the claims with the most potential to succeed.  Moreover, the Government does not explicitly oppose

---

[4]The Amended Motion states, in pertinent part, that Movant "hereby incorporates his claims of ineffectiveness as set forth in his original motion in paragraphs 6(B); 6(E); 6(H); 6(I); 6(J); 6(K); and 6(L). (D.I. 137 at 8 ¶ 6(iv))  The Court views the request to incorporate only seven of the original thirteen claims as an implicit request to delete the other six claims.

the deletion request.  Thus, original Claims One, Three, Four, Six, Seven, and Thirteen from the original § 2255 Motion are deleted.

Second, although Movant timely filed his original § 2255 Motion, his proposed amendments are untimely, because AEDPA's one-year limitations period expired prior to the date on which Movant filed his Motion to Amend.[5]  Pursuant to Federal Rule of Civil Procedure 15(c)(1)(B), the Court may grant Movant's untimely amendments only if the proposed claims "relate back" to his timely, original pleading.  *See Mayle v. Felix*, 545 U.S. 644, 656-57 (2005).  Here, the two additional ineffective assistance of counsel claims which Movant wishes to add to his original § 2255 Motion arise from the basic core facts alleged in the Motion.  In addition, the Government does not oppose amending the original § 2255 Motion to include these two new arguments, even though it acknowledges that they are untimely.  Given these circumstances, the Court will grant Movant's Motion to Amend to the extent it seeks to add the two new ineffective assistance of counsel claims. (D.I. 137; D.I. 140)

However, the Court will deny as untimely Movant's request to add the "*Alleyne* Claim" asserted in the Motion to Amend.  In *Alleyne*, the Supreme Court held that "facts that increase mandatory minimum sentences must be submitted to the jury."  *Alleyne*, 133 S.Ct. at 2163.  Since nothing in Movant's original Motion remotely advances facts or argument similar to the *Alleyne* Claim raised in his Motion to Amend, the untimely *Alleyne* Claim does not relate back to Movant's original Motion.  Moreover, amending the original Motion to include Movant's *Alleyne* Claim would

---

[5]Movant's judgment of conviction became final on December 12, 2012, and the one-year limitations period expired on December 12, 2013.

be futile.  Movant's conviction became final on December 12, 2012,[6] but the Supreme Court did not

decide *Alleyne* until June 2013.  Since the Supreme Court has not made *Alleyne* retroactively

applicable to cases on collateral review, *see United States v. Reyes*, 755 F.3d 201, 212 (3d Cir. 2014),

Movant's argument under *Alleyne* fails.

     In summary, the Court will grant in part the Motion to Amend by deleting six of the original

claims and adding the two new ineffective assistance of counsel claims to this proceeding, but will

deny in part the Motion to Amend and decline to add Movant's untimely *Alleyne* Claim.

     Therefore, the Amended Motion pending before the Court asserts the following ineffective

assistance of counsel claims: (1) counsel failed to secure independent expert fingerprint testimony;

(2) counsel failed to call character witnesses Darin Govens and Tausheed Carr; (3) counsel failed to

call Tiffany Beulah as a witness because counsel was romantically interested in Ms. Beulah;

(4) counsel failed to call Lisa Fitzgerald as a witness; (5) counsel failed to call Leslie Fitzgerald as a

witness; (6) counsel failed to disclose his conflict of interest with respect to Leslie Fitzgerald;

(7) counsel failed to disclose his conflict of interest with respect to Tiffany Beulah; (8) counsel failed

to investigate and utilize an alibi defense by calling Tiffany Beulah and Rasheen Caulk as witnesses;

and (9) counsel failed to utilize a private investigator to interview witnesses.  (D.I. 137 at 7-8, ¶¶ 6(i),

(ii), (iv))

## IV.  DISCUSSION

     Movant has properly presented his ineffective assistance of counsel claims in a § 2255

Motion.  *See Massaro v. United States*, 538 U.S. 500 (2003).  In order to prevail on an ineffective

---

[6]The Third Circuit affirmed Movant's conviction on September 13, 2012.  Since he did not seek a
writ of certiorari, Movant's conviction became final ninety-days later, on December 12, 2012.  *See
Lloyd v. United States*, 407 F.3d 608, 612 (3d Cir. 2005).

assistance of counsel claim, a movant must satisfy both prongs of the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. Under the second *Strickland* prong, a movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694; *see also United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced. *Strickland*, 466 U.S. at 668. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Id.* at 689.

### A. Claim One: Failure to Call Expert Fingerprint Witness

Deciding whether to call an expert is "fundamentally a strategic choice [made by an attorney] after a thorough investigation of the relevant law and facts." *United States v. Caden*, 2007 WL 4372819, at *4 (E.D. Pa. Dec. 12, 2007). An attorney's failure to pursue issues with little chance of success does not constitute ineffective assistance, and a criminal defendant is not prejudiced by counsel's failure to pursue non-meritorious claims. *See Strickland*, 466 U.S. at 690. Notably, an otherwise reasonable decision by counsel not to call certain witnesses is not ineffective simply because it differed from the defendant's wishes. *See. e.g.*. *Diggs v. Owens*, 833 F.2d 439, 445-46 (3d Cir. 1987).

During Movant's trial, the Government called two experts to testify that Movant's fingerprints matched latent prints found on key pieces of evidence. First, Ms. Linda Goldenberg, a

senior fingerprint specialist with the Drug Enforcement Administration, testified that she was completely certain that a known fingerprint for Movant matched a latent print found on a food saver vacuum system.  (D.I. 90 at 35-37)  Second, Mr. Rodney Hegman, a thirty-five year veteran fingerprint examiner with the Delaware Bureau of Identification, testified that he was one hundred percent certain known fingerprints for Movant matched fingerprints and latent prints found on a Federal Express ("FedEx") door tag used in the delivery of a cocaine parcel (D.I. 90 at 44-45), on a note to the FedEx delivery person signed "Gene Tillman" to secure the delivery of a cocaine parcel (D.I. 90 at 46-47), and on a FedEx airbill directed to a Texas address found in co-conspirator Shepherd's apartment (D.I. 90 at 48-49).

In Claim One, Movant contends that defense counsel was ineffective for failing to secure an independent expert witness to challenge the Government's expert testimony that Movant's fingerprints were found on the aforementioned evidence.  This argument is unavailing.  Movant has failed to demonstrate a reasonable probability that the outcome of his proceeding would have been different but for defense counsel's decision to forego calling an additional, independent fingerprint expert.  To begin, Movant does not provide the name of an expert who would have challenged the reliability of the testimony offered by the Government's two expert witnesses.  In turn, Movant's implicit assertion that a fingerprint expert retained by defense counsel would have exculpated him amounts to mere speculation, and is contradicted by the other evidence in the record: direct observations by government agents of Movant's role in retrieving at least two packages, shipping receipts, and the testimony of his co-conspirators.

In addition, defense counsel impeached the Government's experts through cross-examination.  Through his thorough cross-examination of Ms. Goldenberg, defense counsel elicited her testimony that there is no method of scientifically determining when a print could have been

placed on the food saver system.  (D.I. 90 at 38)  As to Mr. Hegman, defense counsel challenged

Hegman's use of an eight-point comparison methodology rather than a twelve-point comparison

methodology.  (D.I. 90 at 53)  Defense counsel reiterated that fingerprint experts cannot determine

when a print is left on an item, and also questioned Hegman about the print positions on the

handwritten FedEx note in order to argue that the placement was consistent with the note being

carried rather than being written upon.  (D.I. 90 at 55)  During closing, defense counsel vehemently

attempted to discount the expert fingerprint testimony, stating that the fingerprints did not indicate

that Movant had engaged in illicit drug trafficking activities, only that Movant had touched the items.

(D.I. 91 at 54-55)

      For all of these reasons, the Court concludes that defense counsel's failure to retain an

independent fingerprint expert did not constitute ineffective assistance.

### B.  Claim Two: Failure to Call Character Witnesses

      In Claim Two, Movant contends that defense counsel provided ineffective assistance by

failing to call Darin Govens and Tausheed Carr as character witnesses.  This argument fails because

Movant has not demonstrated any prejudice resulting from the lack of character witnesses.  Notably,

Movant does not indicate that Govens and Carr were available to testify or the substance of the

testimony they would have provided.  Any testimony about Movant's character would have been

subject to cross-examination, and there is nothing to suggest that such character testimony would

have negated the powerful testimony offered by his co-conspirators, law enforcement officials, and

evidence experts.  There is nothing to indicate that Govens and Carr would have provided more

than general character testimony unrelated to the issues at trial.

      Accordingly, the Court will deny Claim Two as meritless.

### C. Claims Three, Seven, and Eight (one allegation): Failure to Call Tiffany Beulah as an Alibi Witness

During the trial, cooperating defendant Torrence testified that he knew Movant through Shepherd, and that Shepherd told Torrence he was serving Movant "kilos." (D.I. 142 at 5) According to Torrence, in **February 2006**, Shepherd asked Torrence to "serve" Movant with kilograms of cocaine while Shepherd was out of town for the NBA All-Star Weekend in Houston, Texas. *Id.* Torrence sold Movant four kilograms of cocaine in two transactions during the NBA All-Star Weekend. *Id.* Even though Movant was short $10,000 of the required payment, Torrence still gave Movant the cocaine because "That was Manny's [Shepherd's] guy, so I gave it to him." *Id.* Weeks later, in mid-March 2006, Torrence was arrested and held in prison on drug charges. *Id.*

In Claims Three, Seven, and one allegation of Eight, Movant contends that defense counsel provided ineffective assistance by failing to call Tiffany Beulah as a witness to testify that she had purchased a ticket for him to attend the NBA All-Star Weekend in Houston, because that would show Movant was not engaged in drug trafficking. According to Movant, defense counsel did not call Ms. Beulah as a witness because he was romantically interested in her at the time of the trial, and he actually engaged in a romantic/sexual relationship with Ms. Beulah after the trial ended. The Court liberally construes Movant's contentions as asserting the following two arguments regarding counsel's failure to call Ms. Beulah: (1) counsel was operating under a conflict of interest as a result of his romantic interest in Ms. Beulah; and (2) counsel provided ineffective assistance by not calling Ms. Beulah as a witness.

A Sixth Amendment conflict-of-interest claim is treated as a special type of ineffective assistance of counsel claim, because prejudice will be presumed if the attorney actively represented conflicted interests that adversely affected his/her performance. *See Cuyler v. Sullivan*, 446 U.S. 335,

11

350 (1980).  To prevail on an ineffective assistance of counsel claim based on a conflict of interest, a movant "must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* An actual conflict of interest arises when "trial counsel's interests and the defendants' interests diverge[] with respect to a material factual or legal issue or to a course of action." *Government of Virgin Islands v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984).  As explained by the Third Circuit, an "actual conflict" arising from defense counsel's active representation of conflicting interests is established by showing: (1) some plausible alternative defense strategy might have been pursued, and (2) the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.  *See United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999). "[T]he conflict must cause some lapse in representation contrary to the defendant's interests . . . [which] can be demonstrated not only by what the attorney does, but by what he refrains from doing." *Mickens v. Taylor*, 535 U.S. 162, 173 (2002).  However, courts must keep in mind the principle that "defense counsel is in the best position to determine if a conflict exists."  *Id.* at 167-68.

In this case, Movant has provided an affidavit, purportedly from Ms. Beulah, to support his contention that defense counsel was operating under an actual conflict of interest when he decided not to call Ms. Beulah as witness.  (D.I. 112 at 23-25; D.I. 143 at 19-20)  The affidavit asserts that Ms. Beulah met with defense counsel and three Federal agents one day during the trial, and that she told them she purchased the tickets for the NBA All-Star weekend on her credit card through Liberty Travel in **January 2007**.  However, she informed the agents and defense counsel that she did not personally see Movant in Houston during the All-Star Weekend, and that they spoke only by phone on **February 15, 2007**.  After this meeting, defense counsel walked Ms. Beulah to her car, and allegedly asked her for her phone number because he wanted to take her out to dinner in order to become better acquainted with her.  The affidavit also states that defense counsel informed Ms.

12

Beulah that he was not going to call her to testify because "why would [she] be involved with [Movant]." (D.I. 143 at 20) The affidavit asserts that defense counsel continued to pursue Ms. Beulah after the trial ended, and that they were involved in an "intimate and sexual relationship immediately after the trial and then on [and] off until August 2012." (D.I. 143 at 21) Finally, the affidavit alleges that defense counsel "did not want [Ms. Beulah] involved in the trial because he said he wanted to protect [her] and not jeopardize [her]. He did not want [her] to be questioned, because he liked [her]." *Id.*

As an initial matter, the Court notes there are several reasons to doubt the authenticity and/or relevance of the affidavit: (1) it is unsigned and undated; (2) the address listed on the affidavit for Ms. Beulah (755 East 22nd Street, Chester PA) is invalid; and (3) it states that the All-Star NBA weekend for which Ms. Beulah purchased tickets for Movant occurred in **February 2007**, whereas the cocaine deal about which Torrence testified occurred in **February 2006**. (D.I. 122 at 18 n.5 & n.6).

Nevertheless, even if the Court were to accept the allegations in the affidavit as true, Movant has failed to demonstrate that an actual conflict of interest existed. On the second day of trial, March 9, 2010, defense counsel informed the Court about the possibility of having Ms. Beulah testify about the NBA All-Star ticket purchase she had made on Movant's behalf. Defense counsel stated that he was in process of having the Liberty Travel records subpoenaed, and that he wanted his investigator to obtain a statement from Ms. Beulah that same day and turn that statement over to the Government. (D.I. 88 at 271-80) According to Ms. Beulah's affidavit, defense counsel indicated his romantic interest in her for the first time only after defense counsel had informed the Court about the possibility of Ms. Beulah testifying and also after her interview with the FBI agents. The affidavit also asserts that a sexual relationship started "after the trial" and continued until August

13

2012. (D.I. 112 at 24-25)  Since the alleged romantic relationship between Ms. Beulah and defense counsel only began after the conclusion of Movant's trial, defense counsel's pre-relationship interest, at most, constituted a potential conflict of interest, rather than an actual conflict of interest.[7] Consequently, the Court may not presume prejudice and must review Movant's contention regarding defense counsel's failure to call Ms. Beulah under *Strickland*'s two-pronged standard.

As previously stated, Ms. Beulah's affidavit demonstrates that her testimony would not have provided an alibi for Movant or have impeached Torrence's testimony, because she did not actually see Movant in Houston during the 2006 All-Star Weekend.  Additionally, Ms. Beulah would not have been able to definitively testify that Movant actually used the plane tickets himself; rather, she could have only testified that she ordered plane tickets to Houston on Movant's behalf.  Finally, even without Ms. Beulah's testimony, the existence of the plane tickets could have been proven by introducing the Liberty Travel records.  Given all of these circumstances, the Court concludes that Movant has failed to demonstrate a reasonable probability that the outcome of the proceeding would have been different but for defense counsel's failure to call Ms. Beulah as a witness. Accordingly, the Court will deny Claims Three, Seven and one allegation of Eight as meritless.

---

[7]Even if defense counsel's pre-relationship romantic interest in Ms. Beulah somehow constituted an actual conflict of interest, the Court cannot presume prejudice because Movant has failed to demonstrate that a viable alternative strategy existed and that defense counsel did not pursue that strategy because of his interest in Ms. Beulah.  The proffered purpose of Ms. Beulah's testimony was to impeach Torrence's testimony that he sold Movant four kilograms of cocaine while Shepherd was out of town for the 2006 All-Star Weekend.  However, the utility of Ms. Beulah's "alibi" testimony is questionable, because nothing in her affidavit asserts that she actually saw Movant in Houston during the 2006 All-Star Weekend.  Instead, Ms. Beulah's testimony would have been limited to stating that she ordered Movant plane tickets for the 2006 trip (or potentially for a plane trip the following year in 2007), and the subpoenaed Liberty Travel records could have been used to establish the existence of those tickets.  (D.I. 112 at 24)  The fact that defense counsel did not seek to admit the Liberty Travel records suggests that the travel information had limited impeachment value which, in turn, indicates that defense counsel's decision not to call Ms. Beulah as a witness was not related to any romantic or personal interest on defense counsel's part.

### D.  Claim Four: Failure to Call Lisa Fitzgerald as a Witness

Next, Movant contends that defense counsel provided ineffective assistance by failing to call his sister, Lisa Fitzgerald, as a witness to testify that "she rented cars for [Movant] to enable him to travel in support of his basketball coaching duties, not for the facilitation of drug trafficking." (D.I. 112 at 11)  Movant has provided an affidavit from Lisa Fitzgerald, purportedly to support this contention, in which she asserts that: (1) she would have testified that she rented cars from Hertz Rent-a-Car between 2006-07; (2) she allowed Movant to use the cars for his activities involving his "basketball concerns;" (3) the police pulled Movant over while he was in a blue Chevy Impala she had rented; and (4) Movant never had a car that she rented "two weeks straight." (D.I. 112 at 27-28)

Movant's argument is unavailing.  The Government, not Movant, was trying to show that Movant was the individual driving the blue Chevy Impala when he retrieved two cocaine packages between August 24 and 26, 2006, and when he was stopped by the police on August 25, 2006. Government witness Special Agent Greene testified that he saw Movant arrive in a blue Chevy Impala and park near co-conspirator Shepherd's white Ford Explorer in the parking lot of Leslie Fitzgerald's apartment complex on August 24, 2006.  Special Agent Greene also testified that he saw a Tinnicum police officer stopped behind the same blue Chevy Impala on the shoulder of I-95 while he was tailing Movant on August 25, 2006, and that Movant was in the driver's seat. (D.I. 122 at Exh. E pp. 14-15)  Finally, Special Agent Greene testified that he saw Movant arrive in the same blue Chevy Impala and park in the parking lot of Leslie Fitzgerald's apartment complex on August 26, 2006 on two separate occasions. (D.I. 122 at Exh. E. pp. 20-22)  Special Agent Greene described Movant's actions with respect to a FedEx delivery, and a videotape of Movant's actions was played for the jury. (D.I. 122 at Exh. E at 18-26)  In short, Lisa Fitzgerald's testimony that she routinely permitted Movant to use her rented vehicles, including the blue Chevy Impala, would have

damaged, rather than aided, Movant's defense, even if she testified that she believed Movant used the vehicles for "basketball" activities.

Additionally, it is doubtful that Lisa Fitzgerald's testimony that Movant "never had a car that [she] rented for two weeks straight" would have benefitted Movant's defense. During the trial, Movant signed and agreed to the following stipulation:

> In early December 2006, [Movant] borrowed the silver Honda depicted in Government's Exhibit 41 from Miss Dixon. [Movant] returned the Honda to Miss Dixon between one and two weeks later. Miss Dixon had previously received the Honda after Robert Shepherd was arrested. [Movant] left a rental car for Miss Dixon to use while he borrowed the Honda. The rental car was rented in the name of Lisa Fitzgerald.

(D.I. 89 at 199-200) Since Movant's stipulation that he "loaned" a car rented in Lisa Fitzgerald's name to Miss Dixon for a possibly two-week period directly contradicts Lisa Fitzgerald's affidavit statement that Movant never had a car she rented for two weeks straight, Movant cannot demonstrate a reasonable probability that the outcome of his trial would have been different if defense counsel had called Lisa Fitzgerald to testify. Accordingly, the Court will deny Claim Four.

### E. Claims Five and Six: Failure to Call Leslie Fitzgerald as a Witness

During Movant's trial, co-conspirator Shepherd testified that he and Movant received the FedEx boxes of cocaine at vacant apartments, some of which were located in the vicinity of Naamans Road, in Claymont, Delaware. (D.I. 122-1 at 25) Shepherd described how Movant would retrieve the packages of cocaine from the vacant apartments, and then he would either meet up with Shepherd at a new location, or he would sell it and they would meet later to count and package the proceeds. (D.I. 122-1 at 21-31) Shepherd testified that they would occasionally meet at "some apartment that he used off of Naamans Road," called "Society Hill," which he believed was leased to Movant's sister Leslie. (D.I. 122-1 at 31) Shepherd testified that sometimes he and Movant

16

would go to the "Society Hill" apartment after Movant retrieved a cocaine package from one of the vacant Naamans Road apartments, and indicated that they did so in order to divide the cocaine between him and Movant to be sold.  (D.I. 122-1 at 32)

In addition, Special Agent Greene testified that he witnessed Movant arrive and park near Shepherd's vehicle at the Society Hill Apartment complex on August 24, 2006, which is the complex in which Movant's sister leased an apartment.  (D.I. 122-5 at 6-11)  That same day, agents had witnessed Movant retrieve a cocaine parcel from a nearby apartment complex.  (D.I. 88 at 170-174)

In Claim Five, Movant contends that defense counsel provided ineffective assistance by failing to call Leslie Fitzgerald as a witness to testify that Movant did not live with her, did not possess keys to her home, and was not involved in the delivery, preparation, or packing of cocaine going on in her home.  (D.I. 112 at 11)  Presumably, the purpose of such testimony would have been to impeach Shepherd's testimony that he occasionally met Movant at the Society Hill apartment to divide the kilograms of cocaine.

In Claim Six, Movant contends that defense counsel's prior representation of Leslie Fitzgerald in a separate drug case constituted a conflict of interest.  To the extent Movant's conflict of interest argument is an attempt to have prejudice presumed for Claim Five, it is unavailing. Representation of a witness in a separate, unrelated case does not, on its own, create an actual conflict of interest.  *See United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999) (holding that "an actual conflict is more likely to occur in cases of joint representation – rather than simply multiple representation – representation of defendant's in different trials.").  Nothing in Movant's instant Motion or in Leslie Fitzgerald's affidavit provides any indication that an actual conflict existed, primarily because neither of these documents explain why Leslie Fitzgerald and Movant's interests were adverse.  Given these circumstances, the Court cannot presume that defense counsel's failure

17

to call Leslie Fitzgerald to testify prejudiced him. Rather, the Court must determine if defense counsel's failure to call Leslie Fitzgerald as a witness satisfies both prongs of the *Strickland* standard.

Movant cannot satisfy his burden under *Strickland*. Leslie Fitzgerald's testimony would have had limited impeachment value, because Shepherd did not specifically identify the apartment number where he met Movant, he did not assert that Leslie was home at the time, and he did not explain how he and Movant accessed the apartment. In fact, Leslie Fitzgerald's testimony that she had an apartment in the same complex where Special Agent Greene witnessed Movant arrive and park next to Shepherd's truck would have confirmed the Government's evidence against Movant more than it refuted that evidence.

In turn, Leslie Fitzgerald's testimony that Movant did not use her apartment to "sell, pick up and/or deliver cocaine through Federal Express" would have had limited impeachment value, because Shepherd did not state that they used the apartment for those purposes. Rather, Shepherd explained that he and Movant used her apartment for brief meetings to exchange packages or examine the contents of packages.

Given the marginal value of Leslie Fitzgerald's testimony, the Court concludes that Movant has failed to demonstrate a reasonable probability that the outcome of his trial would have been different but for defense counsel's failure call Leslie Fitzgerald to testify. Accordingly, the Court will deny Claims Five and Six as meritless.

### F. Claim Eight: Failure to Call Rasheen Caulk as Alibi Witness

In Claim Eight, Movant contends that defense counsel was ineffective for failing to investigate and pursue his alibi defense and calling Tiffany Beulah and Rasheen Caulk as alibi witnesses. (D.I. 137 at 7) The Court has already discussed and rejected Movant's argument regarding defense counsel's failure to call Tiffany Beulah. Therefore, in this section, the Court will

18

focus on Movant's contention that defense counsel provided ineffective assistance by failing to call Rasheen Caulk as an alibi witness.

In support of the instant argument, Movant has provided an affidavit allegedly from Rasheen Caulk, which states, in pertinent part:

> I know Harold Fitzgerald Jr. and I traveled with him to Houston Texas during the weekend of the All-Star Basketball game in February 2006. We left Philadelphia on Friday and flew to Houston, Texas. We returned to Philadelphia following the Monday. I accompanied Harold during the trip to Houston Texas and we lodged together in one of the hotels in downtown Houston. I believe it was the Marriott Hotel. At no time during that weekend did we leave Houston, Texas.

(D.I. 137 at 24) It appears that Movant offers this affidavit to demonstrate that Caulk's testimony could have been used to impeach Bradley Torrence's testimony about selling four kilograms of cocaine to Movant while co-conspirator Shepherd was away for the February 2006 All-Star Weekend in Houston, Texas. The Court is not persuaded.

First, Caulk's affidavit does not actually provide an alibi for Movant. Although Torrence testified that he sold cocaine to Movant while Shepherd was in Houston for the NBA All-Star Weekend, he also testified that he was unsure about the particular day on which he made the sale. (D.I. 88 at 141-43) When defense counsel initially asked Torrence about this subject, Torrence testified that the sale could have occurred on Wednesday or Thursday of the week preceding the All-Star Weekend. (D.I. 88 at 141-143) Consequently, even if Movant was out of town during the Friday to Monday time period asserted in Caulk's affidavit, Torrence could have met with Movant on the prior Wednesday, Thursday, or even Friday before Movant allegedly left for Houston. This possibility demonstrates the unlikelihood that Caulk's testimony would have done much to undermine Torrence's testimony. Thus, defense counsel's failure to call Caulk as an alibi witness was not objectively unreasonable.

19

In addition, Movant has failed to demonstrate that defense counsel's failure to call Caulk as an alibi witness prejudiced him. First, as previously noted, Caulk's proffered testimony did not actually provide Movant with an alibi. Second, Caulk's proffered alibi relates to a collateral matter, because the drug deal about which Torrence testified occurred in February 2006, which was prior to any of the charged conduct in the Indictment. Shepherd and Fuller, Movant's two co-conspirators and witnesses for the Government, testified that Movant was an "integral" participant in their interstate cocaine-trafficking conspiracy from March 2006 through January 2007. Their testimony concerned the charged conduct, and was supported by documents, law enforcement surveillance, and fingerprint evidence. Notably, Torrence was the only witness who testified about the February 2006 drug deal. Caulk's testimony would not have impeached Shepherd's or Fullers' testimony, would not have provided an alibi for any the charged conduct, and would not have controverted the Government's other substantial evidence.

For all of these reasons, the Court will deny Claim Eight as meritless.

### G.  Claim Nine: Failure to Hire Investigator

In his final Claim, Movant contends that defense counsel provided ineffective assistance for failing to employ a "private investigator to investigate and interview witnesses in his case [that were] identified by [Movant] prior to trial." (D.I. 137 at 8) However, since Movant has failed to identify the potential witnesses or their testimony, his instant ineffective assistance claim fails. *See Butler v. Britton*, 2010 WL 3632713, at *18 (W.D. Pa. Aug. 11, 2010). To the extent the unidentified witnesses are the witnesses named in Movant's other claims, the instant ineffective assistance of counsel claim is denied for the same reasons given with respect to those claims. Therefore, the Court will deny Claim Nine.

## IV.    PENDING MOTIONS

Movant filed a Motion to Stay (D.I. 118) and a Motion for Leave to Amend his § 2255 Motion (D.I. 119) while he was proceeding *pro se* in this case.  Movant subsequently retained counsel to represent him, and counsel then filed a Motion For Leave To Amend (D.I. 137) and a Praecipe For Determination (D.I. 140) asking the Court to rule on the Motion For Leave To Amend.  As previously discussed above, the Court has granted in part the Motion For Leave To Amend. Therefore, the Court will dismiss as moot Movant's earlier *pro se* Motions (D.I. 118; D.I. 119) and the Praecipe for Determination (D.I. 140).

## V.    EVIDENTIARY HEARING

Section 2255 requires a district court to hold a prompt evidentiary hearing unless the "motion and the files and records of the case conclusively show" that the Movant is not entitled to relief.  28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Fed. R. Civ. P. 8(a). 28 U.S.C. foll. § 2255.  As previously explained, the record conclusively demonstrates that Movant is not entitled to relief for any of the claims in his Amended Motion.  Therefore, the Court will deny the Amended § 2255 Motion without an evidentiary hearing.

## VI.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

21

As previously discussed, the Court has concluded that none of the claims in Movant's Amended Motion warrant relief, and further concludes that reasonable jurists would not find that determination debatable or wrong.  Accordingly, the Court will decline to issue a certificate of appealability.

## VII.    CONCLUSION

For all of the foregoing reasons, the Court will dismiss Movant's Amended 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (D.I. 112; D.I. 137 at 6-9) without an evidentiary hearing.  Additionally, the Court will not issue a certificate of appealability.  The Court shall issue an appropriate Order.